77 So.2d 468 (1955)
Katherine MAY, Appellant,
v.
PALM BEACH CHEMICAL COMPANY, Inc., a Florida corporation, Appellee.
Supreme Court of Florida. Special Division A.
January 21, 1955.
*469 H. Irwin Levy, West Palm Beach, for appellant.
Earnest, Lewis, Smith & Jones, West Palm Beach, for appellee.
SEBRING, Justice.
Palm Beach Chemical Company, Inc., lent its automobile to William Charles May, an employee, to be used by him on a purely personal mission. While driving the car on the highway, with the knowledge and consent of the owner, May wrecked the vehicle, and his wife, a passenger, was injured. Mrs. May instituted suit against the owner of the car to recover damages for injuries resulting from the accident. The trial court dismissed the cause, on motion of the defendant, on the ground that to allow the wife to sue the owner for the negligence of her husband would be contrary to public policy. The plaintiff has appealed from this ruling.
Assuming that the allegations of the complaint in the case are sufficient to show gross negligence  a point we do not decide because it was not ruled on in the court below  the question on the appeal is whether or not the plaintiff, who otherwise would have had a claim against the defendant, as the owner of the automobile, is precluded from maintaining the suit by reason of the fact that at the time of the accident the car was being operated by her husband.
We have no decisions in this state that are directly controlling on the issue, and in other jurisdictions the holdings are in conflict.
Maine v. James Maine & Sons Co., 198 Iowa 1278, 201 N.W. 20, 22, 37 A.L.R. 161, decided in 1924, is a case wherein an employee of the defendant negligently operated the defendant's automobile and injured a passenger therein, his wife. It is shown by the opinion that at the time of the accident the driver was engaged in the business of the defendant and was acting within the scope of his employment. It is also shown that the passenger was riding in the car with the knowledge and consent of the defendant company. On these facts it was held, in a suit by the injured wife to obtain damages from the defendant, that the employer was not liable for personal injuries negligently inflicted by an employee upon the employee's wife, because under the law of Iowa the wife had no right of action against her husband for such injuries. In reaching its conclusion the court stated: "Where the driver is not liable, whether his freedom from liability arises from a want of negligence on his part, or from the existence of such a relation between himself and the person injured as to preclude any liability on his part for the injury, the statute does not, we think, create an independent liability on the part of the owner. * * * the statute * * * does no more than to impose upon the owner who consents to the use of his car a liability measured by the liability of the user himself; and that, where, for whatever reason, no liability exists on the part of the driver, none is imposed on the owner."
Under a similar set of facts, but for a different reason, it was held, in Emerson v. Western Seed & Irrigation Co., 116 Neb. 180, 216 N.W. 297, 299, 56 A.L.R. 327, decided in 1927, that a wife who was injured by the negligent operation of an automobile being driven by her husband upon his employer's business could not maintain a suit against the employer. As reasons for the conclusion reached the court assigned the following: "`The act of an employee, even in legal intendment, is not the act of his employer, unless the employer either previously directs the act to be done or subsequently ratifies it. For injuries caused by the negligent act of an employee not directed or ratified by the employer, the employee is liable because he committed the act which caused the injury, while the employer is liable, *470 not as if the act was done by himself, but because of the doctrine of respondeat superior, the rule of law which holds the master responsible for the negligent act of his servant, committed while the servant is acting within the general scope of his employment and engaged in his master's business. The primary liability to answer for such an act, therefore, rests upon the employee, and when the employer is compelled to answer in damages therefor he can recover over against the employee.' * * * If recovery may be had by the wife against the employer, and he in turn may recover from the husband-employee, then the family wealth remains the same save as diminished by the expenses of the litigation. It would seem that to permit a recovery against the employer results simply in countenancing an encircling movement where a frontal attack upon the husband is inhibited."
In Schubert v. August Schubert Wagon Company, 249 N.Y. 253, 164 N.E. 42, 64 A.L.R. 293, a contrary conclusion was reached upon an essentially similar set of facts, the court saying: "An employer commits a trespass by the hand of his servant upon the person of another. The act, let it be assumed, is within the scope either of an express mandate or of an implied one. In either event, if the trespass is not justified, he is brought under a distinct and independent liability, a liability all his own. The statement sometimes made that it is derivative and secondary * * * means this, and nothing more: That at times the fault of the actor will fix the quality of the act. Illegality established, liability ensues. The defendant, to make out a defense, is thus driven to maintain that the act, however negligent, was none the less lawful because committed by a husband upon the person of his wife. This is to pervert the meaning and effect of the disability that has its origin in marital identity.
"A trespass, negligent or willful, upon the person of a wife, does not cease to be an unlawful act, though the law exempts the husband from liability for the damage. Others may not hide behind the skirts of his immunity. The trespass may be a crime for which even a husband may be punished, but, whether criminal or not, unlawful it remains. * * *
"We are told that in the long run the consequences of upholding an action against the master may be to cast the burden on the husband, since the master, if not personally at fault, has a remedy over. * * *
"We find no collision between the principle of liability established in this case and the principle of exemption established in actions against a husband. If such collision, however, could be found, with the result that one or other principle must yield, we agree with Hubbs, P.J., writing in the court below, that the exemption would have to give way as an exception, more or less anomalous, to a responsibility which to-day must be accepted as the general rule."
Chase v. New Haven Waste Material Corporation, 1930, 111 Conn. 377, 150 A. 107, 68 A.L.R. 1497, involved a situation wherein the driver of a car negligently struck and injured his minor child while acting in the service of his employer. The right of the infant to recover from the employer for the negligent act of the servant was placed upon the following ground: "The rule of respondeat superior makes one responsible for the act of his servant when the servant's act was a wrong to the other and was done by him when he was engaged in doing something in the line of his service or incidental to it. * * * `the master's responsibility for the negligence of his servant extends far beyond his actual or possible control over the conduct of the servant. It rests on the broader ground that every man, who prefers to manage his affairs through others, remains bound to so manage them that third persons are not injured by any breach of legal duty on the part of such others, while they are engaged upon his business and within the scope of their authority.'
*471 "Two reasons have been assigned in cases which hold that this rule is not applicable where the action could not be maintained by the injured person against the servant who has through his wrongful act of trespass or negligence caused the injury. The master's liability is said to be derivative; that is, based upon the servant's liability. Maine v. James Maine & Sons Co., 198 Iowa 1278, 201 N.W. 20, 37 A.L.R. 161. The liability of each exists without relation to that of the other; the servant for his own wrongful conduct; the master for the wrongful conduct of his servant while acting for him. The breach of duty as to each is independent of the other. In no sense is the master's duty a derivative one. In jurisdictions where the wife cannot sue the husband, or where, as in this jurisdiction, the child cannot sue his parent, the wife or child would have a remedy for a wrongful trespass or act of negligence against a servant who was not the husband or parent for his wrongful trespass or negligent act and against his master if the wrong done occurred while the servant was engaged in the master's business. If the husband or parent had by his wrongful conduct injured any person other than his wife or child, he would be liable, as would his master, if the wrong was done while he was engaged in his master's business. In either case the master would be liable for the wrong of his servant, for he was at the time acting for him. Though the law may deny to the wife or child injured the right of recovery against the husband or parent who is the servant of the master, the liability of the master must remain until he satisfy it or be by rule of law relieved from the liability for his servant's wrong. * * *
"In Nebraska, Washington, and Michigan, in Emerson v. [Western Seed &] Irrigation Co., 116 Neb. 180, 216 N.W. 297, 229, 56 A.L.R. 327; Doremus v. Root, 23 Wash. 710, 63 P. 572, 54 L.R.A. 649, and Riser v. Riser, 240 Mich. 402, 215 N.W. 290, the court denied a recovery by a wife against her husband's employer for the husband's acts of negligence upon the theory: `If recovery may be had by the wife against the employer, and he in turn may recover from the husband-employee, then the family wealth remains the same save as diminished by the expenses of the litigation. It would seem that to permit a recovery against the employer results simply in countenancing an encircling movement where a frontal attack upon the husband is inhibited.' Emerson v. [Western Seed &] Irrigation Co., supra. This argument disregards the inescapable fact that the employer is liable for the negligent act of his employee done in his service. Public policy may exempt the husband or parent from an action by the wife or child directly against him for his negligent act. There is no rule of law and no public policy which would exempt the employer. The two actions are totally dissimilar, as we have earlier stated. The argument rests upon the fallacious assumption that since the employer has an action over against his employee, it will merely result in the employee paying back to him the recovery from the employer less the expenses of the litigation. The recovery for the wrong done the wife or child by the employer does not belong to the husband or father, but to the wife or child. The recovery by the employer from his employee will diminish his own property; it will not in the eye of the law diminish the property belonging to his wife or child."
In Mi-Lady Cleaners v. McDaniel, 1938, 235 Ala. 469, 179 So. 908, 911, 116 A.L.R. 639, it is held that the immunity of a parent from liability at the suit of unemancipated minor children for personal injuries resulting from the parents' negligence or wilful wrong does not extend to the parents' employer. In support of its conclusion that the employer was not immune from suit the Alabama Court had this to say: "The applicability of the doctrine respondeat superior rests upon the contract relation of master and servant, and the fact that the damnifying act was done by the servant while acting in and about his master's business  that is, acting within the line and scope of his employment. This being shown, the act of the servant is in law the act of the master. * * * The law imputes to the master the act of the servant, *472 and if the act is negligent or wrongful proximately resulting in injury to a third person, the negligence or wrongful conduct is the negligence or wrongful conduct of the master for which he is liable, and this rule of liability is not qualified by any special immunity resulting from the domestic relation existing between the person injured and the servant who committed the negligent or wrongful act."
Other cases on the point appear in an annotation at 116 A.L.R. 646, and earlier notes there cited. We agree with the annotator that the rule embodied in Sec. 217 of the Restatement of the Law of Agency is "in accord with the better reasoned cases" last above discussed: "A master or other principal is not liable for acts of a servant or other agent which the agent is privileged to do although the principal himself would not be so privileged; but he may be liable for an act as to which the agent has a personal immunity from suit. * * * [Comment b.] * * * if an agent has an immunity from liability as distinguished from a privilege of acting, the principal does not share the immunity. Thus, if a servant, while acting within the scope of employment, negligently injures his wife, the master is subject to liability." (Emphasis supplied.)
It will be noted that in all of the foregoing cases where recovery was allowed under the doctrine of respondeat superior the relationship of master and servant was alleged and established between the defendant sued and the operator of the vehicle. The appellee contends that for this reason the governing principles relied upon by other courts to support liability are not controlling in the case at bar, because here it is conceded that at the time of the accident the husband was not acting within the scope of his employment with the defendant, and that consequently, recovery must be authorized, if at all, only upon the theory that the defendant, when it lent its car to its employee for a purely private purpose became liable for his negligent acts in its operation, under the so-called "dangerous instrumentality" doctrine  a doctrine that does not predicate liability upon any theory of master and servant or principal and agent relationship.
We think this contention loses sight of the theory upon which liability is imposed in Florida when the owner of an automobile allows another to operate it on the public highways with his knowledge and consent. A study of the origin and application of the doctrine of vicarious liability on the part of an automobile owner shows clearly that whatever may be the limitations of its scope of application, liability is bottomed squarely upon the doctrine of respondeat superior arising from a principal and agent relationship implied in law. In the pioneer case of Herr v. Butler, 101 Fla. 1125, 132 So. 815, 816, it was squarely held that the owner of an automobile is liable "under the doctrine of respondeat superior as applied to dangerous agencies" for damages caused by its negligent operation by one to whom he entrusts it  citing Southern Cotton Oil Company v. Anderson, 80 Fla. 441, 86 So. 629, 16 A.L.R. 255. That this was not a fortuitous statement is made clear by the concurring opinion in the case, agreed to by the majority of the court, which makes the following analysis of the matter:
"The doctrine of respondeat superior is not always limited to cases where the strict relationship of master and servant exists, but may apply in cases where the relationship is that of principal and agent only. * * * the operator in lawful possession of the car with the consent of the owner in effect operates the car under the authority of the owner's license to use the highways pursuant to Florida statute law, as well as for the benefit of such owner whose agent the operator is, at least to the extent of properly controlling the car * * * and returning it safely back to such owner who intrusted it." (Emphasis supplied.)
In Engleman v. Traeger, 102 Fla. 756, 764, 136 So. 527, 531, it is said "* * * the legal effect of our statutes relating *473 to automobiles, and the requiring registration and operation in the name of the owner, is not to change the rule `respondeat superior,' nor to create or recognize in Florida a different rule of liability thereunder from that which prevails in other states. The only effect our holdings have is to recognize that in so far as the operation of an automobile on the highways is concerned, that the owner stands always, as a matter of law, in the relation of `superior' to those whom he voluntarily permits to use his license and to operate his automobile on the highways under it * * *. So it is on the principle of `respondeat superior' that the owner of an automobile must answer for the negligence of those who operate his automobile under his license, with his knowledge or consent, express or implied. In view of our regulatory laws, an automobile owner will not be permitted to refute the relationship which is implied in law when it appears that such automobile owner has permitted [operation by another]."
While the subsequent decisions on the point have been numerous and, perhaps, sometimes confusing, note in Vol. V, No. 4, Florida Law Review, p. 412, there has been no significant departure in the cases from the above rationale. Therefore, the conclusion is inescapable that whatever distinctions may be attempted between the two relationships, the basis for liability in this agency-implied-in-law, arising from the operation of an automobile with the owner's knowledge and consent, is the same as in the ordinary principal-agent or master-servant status; and cases dealing with the subsidiary issue of marital identity in the latter situation may be appropriately considered in disposing of this appeal.
Accordingly, the judgment appealed from should be reversed for further proceedings in conformance with the principles stated.
It is so ordered.
MATHEWS, C.J., and ROBERTS and DREW, JJ., concur.